

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2013 SEP 26  P 1:45

JON A. SANFILIPPO
CLERK

UNITED STATES OF AMERICA,

    Plaintiff,

v.                          Case No. 13-CR-91

CULLY R. WHITE,

    Defendant.

## PLEA AGREEMENT

1.     The United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Matthew L. Jacobs, Assistant United States Attorney, and the defendant, Cully R. White, individually and by his attorney, Dennis P. Coffey, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2.     The defendant has been charged in a 13-count indictment returned in this district on May 14, 2013, and will be charged in a one-count criminal information that will be filed in conjunction with this plea agreement. The information charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

3.     The defendant has read and fully understands the charges contained in the indictment and information and fully understands the nature and elements of the crimes with which he has been charged. Further, these charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to waive in open court prosecution by indictment and to plead guilty to the charge contained in the information, a copy of which is attached to this plea agreement.

5. The defendant acknowledges, understands, and agrees that he is, in fact, guilty of the offense charged in the information. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits to the following facts and that these facts establish his guilt beyond a reasonable doubt:

The defendant, Cully R. White ("White"), who is a doctor of osteopathic medicine, is a neurosurgeon licensed to practice medicine in the State of Wisconsin. White is also the owner and operator of Dr. Cully R. White, Neurosurgery & Spine, S.C., a Wisconsin service corporation located in Milwaukee, Wisconsin. In his practice, White frequently performs surgery on patients' spine and neck.

To be paid for his services, White submitted claims to insurance companies that provide insurance to White's patients. These insurance companies were engaged in business that affected interstate commerce.

Intra-operative nerve monitoring is a medical procedure in which a physician monitors nerve and spinal cord activity during a surgical procedure. Under certain circumstances, insurance companies will pay or reimburse all or a portion of the cost of intra-operative nerve monitoring. To be eligible for payment, intra-operative nerve monitoring must be performed in real-time by a physician other than the physician performing the surgery. In addition, the monitoring physician must be able

2

to be in constant or immediate contact with the physician performing the surgical procedure.

In approximately October 2010, White approached K.B. and proposed a business arrangement, in which K.B. would prepare reports reflecting that K.B. had performed inter-operative nerve monitoring during White's surgical procedures. White offered to pay K.B. $150 for each report K.B. prepared.

K.B., who is a doctor practicing in family medicine, had no training or experience in performing intra-operative nerve monitoring. White provided K.B. with samples of intra-operative reports and agreed to provide K.B. with the information needed to prepare such reports.

During the period from November 2010 through October 2011, and at White's request, K.B. prepared and provided to White approximately 100 reports reflecting that K.B. had conducted intra-operative nerve monitoring during surgical procedures performed by White. White paid K.B. $14,850 for these reports. K.B. was not qualified to and did not perform intra-operative nerve monitoring during White's surgical procedures. In fact, K.B. only became aware that White had performed surgery after the surgery was completed when White provided K.B. with the necessary information to prepare a monitoring report.

Using the report prepared by K.B., White fraudulently submitted claims totaling approximately $265,000 to various insurance companies, seeking payment for the monitoring services K.B. purportedly provided. Based on these claims, the insurance companies paid White approximately $82,000.

3

The charge set forth in the information to which White has agreed to plead guilty is based on claims in the amount of $3,270 White caused to be electronically submitted from Milwaukee, Wisconsin to Humana, Inc., in Lexington, Kentucky. White initially submitted the claims to Humana on March 24, 2011, and resubmitted the claims on July 4, 2011.

In these claims, White sought payment for intra-operative nerve monitoring and related service White falsely represented had been provided by K.B. during a surgical procedure White performed on patient K.M.S. on December 13, 2010. Based on these claims, Humana ultimately paid White $3,251.50.

This information is provided for the purpose of setting forth a factual basis for the defendant's plea of guilty. It is not a full recitation of the defendant's knowledge of or participation in these offenses.

**PENALTIES**

6.  The parties understand and agree that the offense to which the defendant will plead guilty carries the following maximum term of imprisonment and fine: Twenty (20) years and $250,000. The charge also carries a mandatory special assessment of $100.00, and a maximum of three years of supervised release to follow any term of confinement. The parties further recognize that a restitution order may be entered by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraphs 28 and 29 of this agreement.

7.  The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes, as well as the applicable sentencing guidelines, with his attorney.

4

## DISMISSAL OF REMAINING COUNTS

8. The government agrees to move to dismiss the indictment at the time of sentencing.

## ELEMENTS

9. The parties understand and agree that to sustain the charges of wire fraud, in violation of 18 U.S.C. § 1343, as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant knowingly devised a scheme to defraud, as described in the information; and
>
> Second, that the defendant did so with the intent to defraud; and
>
> Third, that the scheme to defraud involved a materially false or fraudulent pretense, representation, or promise; and
>
> Fourth, that for the purpose of carrying out the scheme or attempting to do so, the defendant caused interstate wire communications to take place in the manner charged.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The parties acknowledge and agree that they have discussed all of the sentencing guidelines provisions that they believe to be applicable to the offenses charged in the information.

5

The defendant acknowledges and agrees that his attorney, in turn, has discussed the applicable sentencing guidelines provisions with him to the defendant's satisfaction.

13. The parties acknowledge and understand that, prior to sentencing, the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty plea solely as a result of the sentencing court's determination of defendant's criminal history.

## Sentencing Guidelines Calculations

14. The parties acknowledge, understand, and agree that the sentencing guidelines calculations included in this agreement represent the positions of the parties on the appropriate sentence range under the sentencing guidelines. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge will consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which defendant is pleading guilty.

16. For purposes of determining the defendant's offense level under the sentencing guidelines, the parties acknowledge that the government will recommend to the sentencing court that the loss amount associated with the defendant's criminal conduct charged in the information is approximately $265,000, which is based on the amount of the claims the defendant submitted to insurance companies for services purportedly provided by K.B. The defendant has reserved the right to argue for a lower loss amount.

### Base Offense Level

17. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense to which the defendant will plead guilty is 6, as determined under Sentencing Guidelines Manual § 2B1.1(a)(2).

### Specific Offense Characteristics

18. The parties acknowledge and understand that the government will recommend to the sentencing court that the defendant's offense level should be increased 12 levels under Sentencing Guidelines Manual § 2B1.1(b)(1)(E) because the government contends that the loss amount associated with the defendant's fraud is approximately $265,000. The defendant has reserved the right to argue for a lower loss amount and, therefore, a smaller increase to the defendant's offense level.

19. The defendant acknowledges and understands that the government will recommend to the sentencing court, that the defendant's offense level should be increased two levels under Sentencing Guidelines Manual § 3B1.3 because the defendant abused a position of private trust, as a physician submitting claims to insurance companies, in a manner that significantly facilitated the

7

commission and concealment of the defendant's offense. The defendant has reserved the right to dispute the application of this guideline provision.

## Acceptance of Responsibility

20. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

21. Both parties reserve the right to apprise the district court and the probation office of any and all information that might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense, as well as any and all matters that might constitute aggravating or mitigating sentencing factors.

22. The government agrees to recommend a sentence no greater than the bottom of the applicable sentencing guideline range, as determined by the sentencing court. Recognizing that the Sentencing Guidelines are advisory, the defendant has reserved the right to argue for a sentence below the applicable sentencing guideline range.

## Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 6 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw his guilty plea solely as a result of the sentence imposed by the court.

## FINANCIAL MATTERS

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable upon entry of the judgment of conviction. The defendant agrees not to request any delay or stay in payment of any and all financial obligations.

26. The defendant agrees that, during the period of any supervision (probation or supervised release) imposed by the court in this case, the defendant will provide the Financial Litigation Unit (FLU) of the United States Attorney's Office with completed financial forms which will be provided by FLU, and will provide any documentation required by those forms. The defendant will provide FLU with such completed financial forms with required documentation within the first two months of supervision, at six month intervals thereafter during supervision, and within the last six months of scheduled supervision.

9

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

28. The defendant agrees that, to the extent that he has not already done so, he will make full restitution to the victims of his fraud. The defendant understands that because restitution for the offense charged is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

29. The parties agree to notify the sentencing court that prior to being charged in this matter, the defendant made restitution to the known victims of his fraud.

### **DEFENDANT'S WAIVER OF RIGHTS**

30. In entering this agreement, the defendant acknowledges and understands that in so doing he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising

peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights.

32. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily waives all claims he may have based upon the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees

11

that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

### Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that he has discussed with his attorney and understands that nothing contained in this agreement is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

### GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of his conviction.

### Further Action by Internal Revenue Service

38. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charge alleged in the information.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

39. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and his attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that he continues to be subject to the terms of the proffer letter.

## VOLUNTARINESS OF DEFENDANT'S PLEA

40. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

13

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorneys have reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorneys and I am satisfied that my attorneys have provided effective assistance of counsel.

Date: 9/20/13

CULLY R. WHITE
Defendant

I am the defendant's attorney. I have carefully reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 9/20/13

DENNIS P. COFFEY
Attorney for Defendant

For the United States of America:

Date: 9/26/13

JAMES L. SANTELLE
United States Attorney

Date: 9/26/2013

MATTHEW L. JACOBS
Assistant United States Attorney

14

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA

        Plaintiff,

v.　　　　　　　　　　　　　　　Case No. 13-CR-91
　　　　　　　　　　　　　　　　[18 U.S.C. § 1343]

CULLY R. WHITE,

        Defendant.

## INFORMATION

**THE UNITED STATES ATTORNEY CHARGES**:

1. At all times material:

    a. Defendant Cully R. White ("White") was a doctor of osteopathic medicine licensed to practice medicine in the State of Wisconsin.

    b. White was the owner and operator of Dr. Cully R. White, Neurosurgery & Spine, S.C., a Wisconsin service corporation located in Milwaukee, Wisconsin.

    c. White specialized in neurosurgery and performed surgical procedures on the spine and neck of patients.

    d. Intra-operative nerve monitoring is a medical procedure in which a physician monitors nerve and spinal cord activity during a surgical procedure.

    e. Under certain circumstances insurance companies will pay all or a portion of the cost of intra-operative nerve monitoring.

ATTACHMENT A

f. Insurance companies will only pay for intra-operative nerve monitoring if it is performed by a physician other than the physician performing the surgery; it is performed in real-time; and the monitoring physician is able to be in constant or immediate contact with the physician performing the surgery.

2. Beginning in approximately November 2010, and continuing thereafter until approximately October 2011, in the State and Eastern District of Wisconsin, and elsewhere,

**CULLY R. WHITE,**

having devised a scheme to defraud and to obtain money by means of material false and fraudulent pretenses and representations (the "scheme"), which scheme is more fully described below, did knowingly cause wire communications to be transmitted in interstate commerce for the purpose of executing his scheme.

### The Scheme

3. White's scheme was essentially as follows:

a. In approximately October 2010, White recruited K.B., a doctor licensed to practice medicine in the State of Wisconsin, to prepare reports falsely reflecting that K.B. had conducted intra-operative nerve monitoring during surgical procedures performed by White. White agreed to pay K.B. $150 for each report K.B. prepared.

b. White provided K.B. with examples of reports reflecting intra-operative nerve monitoring and agreed to provide K.B. with the necessary information to prepare such reports.

c. K.B. had no training or experience in performing intra-operative nerve monitoring and never performed monitoring of White's surgical procedures. Instead, after

2

he completed surgical procedures, White provided K.B. with the necessary information to prepare monitoring reports.

  d. Based on the information provided by White, K.B. prepared reports falsely representing that K.B. had performed intra-operative nerve monitoring during surgical procedures performed by White. In fact, K.B. was not present, did not monitor, and was not aware of the procedures until after the procedures were completed when White provided K.B. with the necessary information to prepare the monitoring reports.

  e. Using the reports prepared by K.B., White submitted claims totaling approximately $265,000 to insurance companies fraudulently seeking payment for services purportedly provided by K.B.

4. As a result of his scheme, White fraudulently obtained approximately $82,000 from health care benefit programs for intra-operative nerve monitoring services White falsely represented had been performed by K.B.

## Execution of the Scheme

5. On or about March 24, 2011, in the State and Eastern District of Wisconsin, and elsewhere,

**CULLY R. WHITE**

knowingly and willfully executed and attempted to execute his scheme to defraud to obtain money by means of material false and fraudulent pretenses and representations, which scheme is more fully described above, by causing a claim in the amount of $3,270 to be submitted electronically from Milwaukee, Wisconsin to Humana, Inc., an insurance company with a billing address located in Lexington, Kentucky, seeking payment for intra-operative nerve monitoring and related services,

3

which White falsely represented had been provided by K.B to patient K.M.S., on whom White performed surgery on December 13, 2010.

All in violation of Title 18, United States Code, Sections 2 and 1343.

_____  
Date

_____  
JAMES L. SANTELLE  
United States Attorney

4